FILED
APR 10 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff, ) <br> v. ) <br> DMARCE HUTCHERSON, ) <br> Defendant. ) | No. 12-00235 YGR (DMR) <br><br> DETENTION ORDER |

## I. BACKGROUND AND INTRODUCTION

Defendant Dmarce Hutcherson is charged in an indictment with violations of 18 U.S.C. §§ 371 (conspiracy to commit robbery and assault on a federal officer); 111(b) (assault on a federal officer with a deadly or dangerous weapon); 2114(a) (robbery of mail, money, or other property of United States); and 924(c)(1)(A)(ii) (using, carrying, possessing, and brandishing a firearm during, in relation to, and in furtherance of a crime of violence).

On March 30, 2012, Mr. Hutcherson made his initial appearance on the underlying criminal complaint. At that time, the United States moved for Mr. Hutcherson's detention pursuant to the Bail Reform Act and asked for a hearing as permitted by 18 U.S.C. § 3142(f).

DETENTION ORDER
CR 12-00235 YGR (DMR)        1

cc: Copies to parties via ECF, 2 Certified copies to US Marshal, Frances and Pretrial Svcs.

Pretrial Services prepared a full bail study, which recommended Mr. Hutcherson's release subject to certain conditions, including a $100,000 secured bond and placement in a halfway house. On April 4, 2012, the court conducted a detention hearing, but ordered further proceedings due to the unavailability of a key proposed surety. The court subsequently conducted further detention proceedings on April 9, 2012. For the reasons stated below, the court orders that Mr. Hutcherson be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c)(1)(B). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi*, 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. § 3142(f)(2)(B). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. § 3142(g); *Motamedi*, 767 F.2d at 1407.

The Ninth Circuit has held that the second factor -- the weight of the evidence -- should be treated as the least important. This guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The[] factor[] may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*

The charges filed against Mr. Hutcherson include a violation of § 924(c)(1)(A)(ii) (using, carrying, possessing, and brandishing a firearm during, in relation to, and in furtherance of a crime of violence). This charge specifically gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. §3142(e)(3)(B). A presumption raised under section 3142(e) shifts the burden of *production* to the defendant; the ultimate burden of *persuasion* remains with the government. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

The affidavit supporting the underlying criminal complaint alleges that on March 28, 2012, federal agents conducted an undercover operation in Richmond, California in an attempt to purchase a grenade launcher for $1000.00 from individuals identified as "O. Mobley" and "Robert Williams." (Compl. Aff. ¶ 5.) An undercover federal agent drove up to a previously-arranged parking lot location, along with an individual riding in the passenger seat and one other individual who left the car upon arrival. (Compl. Aff. ¶ 7.) Mr. Hutcherson and Khusar Mobley arrived and entered the back seat of the car; Mr. Hutcherson sat behind the driver's seat. (Compl. Aff. ¶ 9.) Soon thereafter, Mr. Mobley produced a black handgun and pointed it over the seat at the undercover agent. (Compl. Aff. ¶ 12.) The agent said words to the effect of, "Don't shoot,

DETENTION ORDER
CR 12-00235 YGR (DMR)                          3

I'll give you everything you need," and, "Let me park the car." (Compl. Aff. ¶ 13.) Mr. Hutcherson allegedly produced a gun and assisted Mr. Mobley in the attempted armed robbery. (Compl. Aff. ¶ 14.) The individual who left the car upon arrival then entered the front passenger area, struggled for Mr. Mobley's gun, and eventually wrestled it away from him. (Compl. Aff. ¶ 15.) According to the affidavit, Mr. Hutcherson then exited through a rear door still armed with a pistol. (Compl. Aff. ¶ 16.) Agents responded by discharging their weapons, resulting in Mr. Hutcherson's receiving three gunshot wounds. (Compl. Aff. ¶ 16.) The affidavit states that a semi-automatic pistol was found on the ground next to Mr. Hutcherson. (Compl. Aff. ¶ 16.) A third defendant, Otis Mobley, remained outside the car. (Compl. Aff. ¶ 17.) He fled the scene, but was apprehended shortly thereafter. (Compl. Aff. ¶ 17.)

The court also reviewed video footage from the undercover agent's car, which was equipped with audio recorders, and video cameras that covered at least two different angles. The footage clearly shows Mr. Mobley's pulling a gun and pointing it at the agent, until he is disarmed by another individual following a struggle. The footage of Mr. Hutcherson shows him only from a rear view, since the camera was positioned behind him. The video thus does not show his face, nor does it provide an angle that allows the viewer to see whether he pulled out a weapon and, if so, what he did with it.[1]  However, the video corroborates that Mr. Hutcherson was present in the car and appeared to be acting in concert with Mr. Mobley in an armed robbery attempt.

The nature and circumstances of the charges against Mr. Hutcherson are disturbing. At a minimum, they involve his direct participation in a high-risk armed robbery that ultimately led to Mr. Hutcherson's being shot three times. It is unknown at this point whether Mr. Hutcherson had any involvement in planning the initial reason for the meeting -- the supposed sale of a grenade launcher. The court recognizes the Ninth Circuit's admonition to guard against

---

[1] The government proffered that the undercover agent would testify that Mr. Hutcherson pulled his gun and pointed it at the agent's head, and that the agent was able to see Mr. Hutcherson do so. Mr. Hutcherson disputes this assertion.

DETENTION ORDER
CR 12-00235 YGR (DMR)                                4

examining the weight of the evidence as to make an inappropriate "preliminary determination of guilt." For this reason, the court considers the first two factors solely for the purposes of determining whether Mr. Hutcherson can be released under the Bail Reform Act. In this case, the nature and circumstances of the alleged offense, as well as the weight of the evidence, raise serious concern about the danger that Mr. Hutcherson may pose to other persons or to the community.

### B. The History and Characteristics of Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Mr. Hutcherson is nineteen years old and has lived in the East Bay area his entire life, mostly with his grandparents. Since at least 2009, he has split time between his grandmother's home in Antioch, his grandfather's home in Richmond, and his sister in Stockton.

Mr. Hutcherson completed the eleventh grade. Two or three years ago, he worked for several months at Starbucks, but has no other formal employment history. He sustained a juvenile arrest in 2002 for petty theft, but otherwise has no criminal history. As to substance abuse, Mr. Hutcherson began using marijuana when he was fifteen and continues to use it three to four times per week. He also has a history of taking ecstacy and has an outstanding traffic bench warrant for an arrest for driving under the influence of alcohol. California Department of Motor Vehicle records indicate that Mr. Hutcherson's license is suspended due to a failure to appear and/or failure to pay fines. According to a federal agent, the Richmond Police Department has validated Mr. Hutcherson as a member of the "Deep C" gang. Mr. Hutcherson disputes this fact, and his mentor and grandmother are unaware that he has any gang affiliation.

The court questioned two potential sureties proffered by Mr. Hutcherson. Emmanuel Johnson is a retiree who lives in Richmond and who met Mr. Hutcherson when he was in elementary school. He has mentored Mr. Hutcherson since that time and still sees him once or twice a month, mostly to play or watch basketball together. Among other things, Mr. Johnson is a youth basketball coach; he describes Mr. Hutcherson as a talented basketball player. Mr. Johnson owns a home with significant equity. He indicated that he was willing to assist in Mr. Hutcherson's release by signing a bond secured by his own property. Mr. Johnson's willingness

to risk his property and financial well-being on Mr. Hutcherson's behalf says much about his trust in Mr. Hutcherson's ability to comply with the conditions of a release order. However, upon questioning by the court, it became apparent that Mr. Johnson's trust in Mr. Hutcherson is based on limited knowledge. Mr. Johnson had no idea about Mr. Hutcherson's regular drug use and was completely taken aback by Mr. Hutcherson's involvement in the incident that led to his arrest. For that reason, Mr. Johnson's apparent confidence in Mr. Hutcherson's character provides little confidence to the court.

The court also questioned Mr. Hutcherson's grandmother, Ivory Powell. Although Ms. Powell confirmed that Mr. Hutcherson split his time living with her, his grandfather, and his sister, she was not able to estimate the time he spent at each home, nor could she elaborate upon the circumstances in which he would stay at one home versus another. She, too, was largely unaware of Mr. Johnson's regular drug use. She stated that Otis and Khusar Mobley are also family members and that Mr. Hutcherson regularly spends time with them. She, too, was completely surprised by the involvement of all three men in the charged incident. As with Mr. Johnson, the court finds that Ms. Powell does not have enough of a complete picture of Mr. Hutcherson's activities and character to convince the court that he does not pose a danger to the community.

In viewing the record as a whole, the court notes that Mr. Johnson has a minimal criminal record and at least two viable sureties who are willing and able to support his release. However, the highly disturbing nature and circumstances of the charged offenses highlight that Mr. Hutcherson presents a danger to others or to the community. The government is entitled by statute to a rebuttable presumption of detention in this case; the defense was not able to proffer convincing information to overcome the presumption – other than by identifying the availability of viable sureties. Mr. Hutcherson's supporters simply did not demonstrate enough knowledge about him to be able to counteract the body of information indicating that Mr. Hutcherson presents a danger to the community that cannot reasonably be mitigated through appropriate court-ordered conditions. For these reasons, the court finds clear and convincing evidence that Mr. Hutcherson presents a danger to the community and that no condition or combination of

DETENTION ORDER
CR 12-00235 YGR (DMR)                                          6

conditions in § 3142(c) will reasonably assure the safety of any other person or the community. § 3142(e), (f); *Motamedi*, 767 F.2d at 1406.

Mr. Hutcherson shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: April 10, 2012

DONNA M. RYU
United States Magistrate Judge